EVANDER, J.
Thaddeus Grant appeals his conviction and sentence for possession of a firearm by a convicted felon. He pled no contest to the charge after the denial of his dispos-itive motion to suppress. Because the trial court erroneously prevented Grant from introducing a recording of a 9-1-1 call into evidence, the contents of which purportedly provided the legal basis for his stop, we reverse.
On the afternoon in question, Officers Hernandez and Payne of the Eatonville Police Department stopped and detained Grant after responding to an emergency dispatch regarding a black male armed with a handgun in the vicinity of 230 Johnson Street. During the detention, the officers seized a firearm from Grant.
Grant filed a motion to suppress, alleging that the officers had illegally stopped and detained him. Grant argues that the stop resulted from an anonymous tip and that the tip and the arresting officers’ follow-up observations were insufficient to establish a reasonable or founded suspicion of criminal activity on Grant’s part.
The State’s only witness at the motion to suppress hearing was Officer Hernandez. On direct examination, Officer Hernandez testified that she and Officer Payne had received “an emergency tone out in reference to a black male armed with a handgun.” According to Officer Hernandez, additional information received from dispatch indicated that the suspect had threatened an individual inside the residence at 230 Johnson Street. The suspect was described as a black male dressed all in black accompanied by a black female in a red shirt and blue denim shorts. The suspect and the accompanying female were reported to have been last observed walking on Johnson Street towards Kennedy Boulevard.
The officers responded immediately and when they turned off Kennedy Boulevard onto Johnson Street, they observed two individuals fitting the aforesaid description. Officer Hernandez further testified that she exited the vehicle and told the suspect, later identified as Grant, to “come over and talk to us.” She further advised Grant to keep his hands where she could see them. At that point, Grant turned and Officer Hernandez observed a “bulge” on Grant’s right side beneath his shirt “that looked like what could possibly be a handle of a weapon.” Both officers then drew their weapons and Grant proceeded to try to run away. Officer Hernandez testified that Grant did not run very far and then “laid on the ground.” Grant was handcuffed and a handgun was found “down on the bottom part of his [right] pant leg.”
On cross-examination, Officer Hernandez acknowledged that prior to instructing Grant to stop, she had not observed Grant *417 engage in any illegal activity. She further admitted that her written report made no mention of a “bulge” being observed beneath Grant’s shirt, nor of any attempt by Grant to run from the officers. In fact, Officer Hernandez’ report stated that the “subject began to walk away and refused to obey commands.”
Upon the completion of cross-examination, defense counsel attempted to read the “CAD report” into the record in order to demonstrate “the nature of this anonymous call that was never corroborated and never confirmed.” The trial judge questioned the report’s relevancy, appearing to believe that the nature of the emergency call/tip did not matter if a police officer was responding in good faith to a dispatch. After an extended debate with the trial judge, defense counsel then called Grant’s girlfriend as a witness without ever obtaining an express ruling on his request to read the CAD report into evidence. After the girlfriend’s testimony, defense counsel requested the trial court listen to a recording of the 9-1-1 call before it ruled on the motion to suppress. Defense counsel proffered that the 9-1-1 recording would reflect that the caller merely gave a description of a black male with a gun and did not reference any threatening behavior. The trial court declined to listen to the 9-1-1 recording, stating:
It doesn’t matter what the 9-1-1 call said. The officers were responding to a tone out from emergency dispatch, not to the 9-1-1 call. So they have a good-faith basis—
[[Image here]]
The motion is denied.
On appeal, Grant argues that the stop was based solely on an anonymous call, the contents of which failed to establish a reasonable suspicion of criminal activity. In support, Grant cites to Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), where the United States Supreme Court held that an anonymous tip relating that a person is carrying a gun is, without more, insufficient to justify a police officer’s stop and frisk of that person. In J.L., the officers who actually stopped and frisked the defendant were, as in the present case, responding to a dispatch. They were not the individuals who received the anonymous phone call. See also Baptiste v. State, 995 So.2d 285 (Fla.2008) (holding anonymous 9-1-1 call to police stating that black male wearing white t-shirt and blue-jean shorts waved firearm in front of supermarket did not provide officers with necessary reasonable suspicion to initiate investigative stop of defendant, who matched description provided in anonymous call, where responding officers did not observe defendant engage in any unlawful acts, unusual conduct, or suspicious behavior).
In response, the State argues that the totality of evidence established reasonable suspicion that Grant committed or was committing a crime. The State points to Officer Hernandez’ testimony regarding: (1) the detailed description of the suspect provided by dispatch, (2) the information provided by dispatch as to the occurrence of an aggravated assault with a firearm, and (3) the officers’ observation of a possible weapon beneath Grant’s shirt. The State further contends that the 9-1-1 call was not “totally anonymous” because the CAD report shows that the caller provided an address and the telephone number. Notably, the State does not argue that the detention of Grant was valid based on a good faith reliance by the arresting officers on information received from dispatch. Instead, the State suggests that pursuant to the “tipsy coachman” doctrine, the trial court should be upheld because it reached the right result, albeit for the wrong reasons. Robertson v. State, 829 *418 So.2d 901, 906 (Fla.2002) (“This longstanding principle of appellate law, sometimes referred to as the ‘tipsy coachman’ doctrine, allows an appellate court to affirm a trial court that ‘reaches the right result, but for the wrong reasons’ so long as ‘there is any basis which would support the judgment in the record.’ ” (citations omitted)).
The trial court’s basis for upholding the validity of the stop — the officers’ purported good faith reliance on the information received from dispatch — was incorrect. The knowledge of the dispatcher must be imputed to the officers in the field. United States v. Torres, 534 F.3d 207, 210 (3d Cir.2008); see also J.L.; Baptiste.
Additionally, the State’s “tipsy coachman” argument fails for several reasons. First, the trial court indicated that it would not give weight to Officer Hernandez’ statement regarding the “bulge” beneath Grant’s shirt. Second, the State cannot rely on the CAD report regarding the nature and contents of the 9-1-1 call because the report was never admitted into evidence. Third, the defense was denied the opportunity to challenge Officer Hernandez’ contention that the dispatch information involved a report of an aggravated assault with a firearm given the trial court’s refusal to listen to a recording of the 9-1-1 call.
On the other hand, we cannot accept Grant’s argument that the evidence established that the arresting officers lacked a reasonable or founded suspicion of criminal activity to justify his detention. Indeed, because of the trial court’s erroneous conclusion that the CAD report and 9-1-1 recording were irrelevant, it is not even clear from the record that the information provided by dispatch to Officers Hernandez and Payne originated from a 9-1-1 call. Accordingly, we conclude that the trial court’s denial of Grant’s motion to suppress must be reversed and remanded for a new evidentiary hearing.
REVERSED and REMANDED.
SAWAYA, J., concurs.
ORFINGER, J., concurs, with opinion.